In a collision between an automobile in which Mrs. Louisa J. Richey was riding, and a truck owned by defendant, Service Dry Cleaners, a co-partnership, then being operated by its agent, Mrs. Richey was seriously injured. She sues defendant, its individual members and the carrier of its public liability insurance, Maryland Casualty Company, to recover damages sustained by her as a consequence of the accident. Her husband, W.M. Richey, joined in the suit and sued to recover physician's, hospital and other bills incurred in the treatment of his wife. The accident, it is alleged resulted from the negligence in several respects, of the operator of the truck, which, in view of admission of the defendant, it is unnecessary to here detail.
Answering, the defendants set up that Mrs. Richey sustained only minor injuries in the accident and that within a short time thereafter she fully recovered therefrom. They aver that the trips she made to and time spent by her in a sanitarium, after the initial trip thereto, were not necessary because of the effects of the accident, but were necessitated from causes that had no relation whatever to the collision. Finally, defendants plead: *Page 285 
"* * * that plaintiffs are entitled to recover of the defendants the actual medical and hospital expense incurred by plaintiff, Mrs. Richey, as a result of the accident giving rise to this suit, and also to some reasonable amount in damages commensurate with the nature of the injuries which she actually received, which defendants aver to have been of a minor nature."
There was judgment for Mrs. Richey in the sum of $850.00 and in favor of Mr. Richey for $526.74. Plaintiffs appealed. Defendants have not answered the appeal.
In this court the amount of the judgment in favor of Mr. Richey is not questioned in any respect in fact, appellants' counsel in brief and oral argument, declared that the only issue now before the court is that of quantum due Mrs. Richey. He insists that the award to her by the lower court is manifestly inadequate in view of the character, extent and duration of the injuries sustained by her in the accident, and their prolonged effect upon her nervous system.
Hereinafter we shall refer to Mrs. Richey as plaintiff or appellant.
The collision occurred close to the "Silver Star Club" in or near the Village of Woodworth, Rapides Parish, Louisiana. Appellant and a lady friend occupied the car's rear seat while their husbands were on the front seat. By the impact of the collision she was violently thrown against the back of the front seat, rebounded against the back seat and fell to the floor in a semiconscious condition. She was immediately removed from the car and placed upon the ground beside the road. Witnesses who were then present testified that she was groaning and complaining loudly of pain in the back and chest. That she was suffering intensely was obvious to these witnesses, one of whom said: "You could see it in her face". An ambulance soon arrived and carried her home and within a few hours she was transferred to a hospital in the City of Alexandria and was there promptly examined by her family physician, Dr. N.M. Brian. He found her breathing to be difficult, the breaths being "short and jerky". She was then experiencing quite a bit of pain and specifically complained of it in the left chest, the back and upper part of the abdomen. Objective symptoms consisted of redness of the left side of the chest and some swelling. This swelling increased in area and tenderness. X-ray pictures were negative as to bone fracture or other injury of internal organs. Such pictures do not reveal injury to the tissues, ligaments and muscles. Mrs. Richey was then in a highly nervous condition and to attain rest and quietness sedatives were administered to her. She was then returned home on the doctor's advice.
By November 16th, the third day after the accident, appellant's general condition had grown worse. She coughed up blood and on being advised of these developments, Dr. Brian directed that she be returned to the hospital for further examination and professional attention by him. He then found her to be in intense pain and further he says: "* * At that time she had some swelling over the left chest and quite a bit of redness and discoloration of tissue and even more pain than ever in breathing and complaining quite a bit of stiffness and soreness of the left arm and pain on motion."
The objective and subjective symptoms of which the doctor speaks were but the natural and logical consequences of the violent contact of the body against the inside of the car when the accident happened.
Dr. Brian prescribed bed rest and the giving of local heat in the form of diathermy and sedatives. The primary objective was to attain healing of the bruised tissues, etc. by rest and relaxation. The patient was returned home on November 25th. She was again hospitalized on December 31st and remained therein to January 9th. At that time she complained of nausea, vomiting and soreness of the abdomen. She was exceedingly nervous. Dr. Brian re-examined her to determine if any condition had been overlooked by him during prior examinations. He found her then to be suffering from acute gastritis and colitis, more or less due to her extremely nervous condition. She then complained of soreness of the left chest and left arm. She was again admitted to the hospital on January 27th, complaining of nervousness and soreness over the abdomen, and remained therein until February 13th. Dr. Brian largely ascribed her nervousness at this time to menopause, from *Page 286 
which she had been suffering for a year or more. She was lastly admitted to the hospital February 22nd and was discharged therefrom on March 10th. At that time she was very nervous and emotionally upset. The following testimony given by Dr. Brian is enlightening, to-wit:
"Q. In the case of Mrs. Richey, you have testified you were treating her for menopause condition prior to this accident. Had that nervous disposition manifested itself already? A. Oh, yes, very much so.
"Q. She was of an extremely nervous state then prior to this accident? A. That is right.
"Q. What was that condition after that accident? A. Exaggerated that much more. Any complaint or symptom she would get in the beginning would be immediately attributed to her previous accident. The actual amount of mental upset she had along with that, I think, had a great deal to do with her other symptoms following.
* * * * * *
"Q. Is it natural that a person in that condition would form an exaggerated picture of a condition that would not be true in a normal person? A. That is true. Anything that might happen to her, regardless of what it might be, during that time would, in her own mind, as far as her nervous condition is concerned and the fact that she was already nervous and upset, exaggerate anything she might have. This increase in nervousness she would have from anything like that could bring on other symptoms..
"Q. Isn't that condition sometimes referred to as hysteria? A. That is right."
This testimony speaks for itself.
At date of trial, sixteen months after the accident, Dr. Brian was of the opinion that plaintiff was still suffering indirectly from the effects of the collision. He also testified that for three or four months following the accident she had soreness in the left chest, shoulder and arm, "such as you have in a severe contusion like this."
Dr. B.H. Texada examined appellant on April 3, 1946, which was two weeks prior to the trial. He also had X-ray pictures made of the upper part of her body. He found no evidence of trauma. After examining the hospital records and charts pertaining to Mrs. Richey's case, he was of the opinion that the greater part of the treatment administered to her was necessary on account of nervousness brought about by the transition through which she was passing, commonly called a "change of life". However, the doctor readily agreed that nervousness, which accompanies such a condition, would be aggravated by an experience of the kind plaintiff had. He testified: "* * * Her nervous symptoms at the present time may have been exaggerated by that injury at that time."
That plaintiff suffered a terrific jarring of the body when the vehicles collided and thereafter for three or four months experienced much pain and discomfort cannot well be questioned. Although no bones were broken it is evident deep seated tissues, ligaments and muscles were badly bruised and materially disturbed. This traumatic condition was reflected to some extent by objective symptoms and its existence confirmed by pain and suffering, and the time required for healing.
It is definitely established that the nervousness which was associated with the menopause was greatly aggravated from the effects of the collision. True it is that menopause had existed for a year or more prior to the accident, but so far as the record discloses it was not so serious as to require hospitalization for relief.
It is intimated in argument of defendant's counsel that nearly all of the trips to and time spent by appellant in the hospital were unnecessary or were induced soley from nervousness attributable to menopause. We are unable to concur in this position. The medical testimony leads us to the conclusion that hospitalization to the extent and at the times had was conducive to improvement of her physical condition, and went far toward alleviating the pain and discomfort with which she was afflicted.
To determine a proper award of damages in this case, as so often happens, is not without difficulty. The award of the lower court if made a few years ago in a case of this character, would have been adequate. It is not so under present economic conditions. *Page 287 
The purchasing power of American money is far below what it was five years ago, and all signs support the belief that many years will have to elapse before improvement in this connection will be measurably attained. We had occasion to touch upon this subject in Scott v. Claiborne Electric Cooperative, Inc., et al., La. App., 13 So.2d 524 and in Weadock et al. v. Eagle Indemnity Co. et al., La. App., 15 So.2d 132.
Awards of damages for physical injuries and suffering a few years ago do not wholly serve as a criterion for awards at this time.
For the reasons herein given, the judgment in favor of Mrs. Louisa J. Richey, appealed from, is amended by increasing the amount thereof to One Thousand Five Hundred ($1,500.00) Dollars, and as thus amended, said judgment is affirmed. The judgment in favor of W.M. Richey, for the reasons herein assigned, is affirmed. Defendants are cast for all costs of suit.